```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF GEORGIA
                    COLUMBUS DIVISION
```

| | | |
|---|---|---|
| BENNIE MAE SNEAD, | * | |
| Plaintiff, | * | |
| vs. | * | |
| GEORGIA DEPARTMENT OF CORRECTIONS, WARDEN DESHAWN JONES, and JOHN and JANE DOE, CORRECTIONS OFFICERS 1-10, | * * * | CASE NO. 4:23-CV-153 (CDL) |
| Defendants. | * * | |

## O R D E R

Bennie Mae Snead alleges that her brother Curtis Mincey, a 74-year-old man who suffered from mental illnesses, was beaten to death while he was incarcerated at Rutledge State Prison. Plaintiff brought this action against the Georgia Department of Corrections and Rutledge's former warden, Deshawn Jones, asserting claims under 42 U.S.C. § 1983 for violations of Mincey's federal constitutional rights, as well as claims under the Rehabilitation Act, the Americans with Disabilities Act, and Georgia law. Plaintiff also asserts claims against several "John and Jane Doe" Defendants, who are corrections officers whose identities Plaintiff does not yet know. The two named Defendants—Jones and the Department—moved for judgment on the pleadings as to all the claims against them. The Court previously denied that motion in part, finding that Plaintiff should be allowed to conduct limited

discovery before the Court rules on (1) whether Jones is entitled to qualified immunity on the § 1983 claim against him, (2) whether the Department is entitled to state law sovereign immunity on the state law claims against it, and (3) whether Plaintiff may proceed on her disability discrimination claims under the Americans with Disabilities Act and the Rehabilitation Act.  *See* Order (Jan. 17, 2024), ECF No. 10.[1]

A panel of the Eleventh Circuit vacated the Court's order in an unpublished, per curiam decision.  The panel concluded that the Court erred in deferring ruling on the immunity defenses until Plaintiff conducted limited discovery, and it remanded the case so the Court can "decide the defendants' immunity issues in the first instance."  *Snead v. Georgia Dep't of Corr.*, No. 24-10511, 2024 WL 4132941, at *3 (11th Cir. Sept. 10, 2024) (per curiam).  The mandate has issued.

The Court is duty-bound to abide by the panel decision in this case, no matter how unpersuasive the Court may find that decision to be.  But it is worth stating clearly what has happened here.  Someone who was allegedly suffering from mental illness was beaten to death while in the custody and care of the State.  Because

---

[1] The Court granted the motion as to Plaintiff's § 1983 claims against the Department (and Jones in his official capacity) because state agencies like the Department are not "persons" subject to suit under § 1983.  The Court also granted the motion as to Plaintiff's individual capacity claims against Jones under the Rehabilitation Act and the Americans with Disabilities Act because those statutes do not create a cause of action against individuals.

2

they were not present during the beating, the mentally ill inmate's loved ones have no personal knowledge about the events giving rise to the beating or who was involved.  That information is within the custody and control of the State.  Thus, Plaintiff's ability to thoroughly state all of her claims, which depend upon information in the hands of the State and the Defendants, is substantially hampered.  Plaintiff needs information from the Defendants to move her claims from the "plausible" to "the legally sustainable."  This Court, exercising its discretion informed by a sense of justice that seeks to allow all parties an opportunity to be realistically heard, made the rather unremarkable determination that Plaintiff should be able to conduct some limited discovery before her claims were dismissed under the circumstances here, where the evidence necessary to allege the factual basis for her claims in good faith is within the sole control of the State and the Defendants.  But the Court of Appeals panel here says Plaintiff is not entitled to such limited discovery and instead slams the courthouse door shut (at least as to Plaintiff's § 1983 claim against Jones and her state law claims against the Department) with a rather hollow rationale—"them's the rules."[2]

---

[2] The undersigned hastens to add that it does not believe its attempt to exercise discretion in this action amounted to ignoring existing law or making new law. The Court made no determination of any substantive law issue but simply authorized limited discovery that it believes to be consistent with the Federal Rules of Civil Procedure, including Rule 1, which advises that the rules should be construed to secure the "just . . . determination of every action." Fed. R. Civ. P. 1.

Given the mandate of the appellate panel, as discussed in more detail below, the Court now must conclude that based on the factual allegations in the current Complaint, Jones is entitled to qualified immunity on the § 1983 claim against him and official immunity on the state law claims against him.  The Court further concludes that based on the factual allegations in the current Complaint, the Department is entitled to state law sovereign immunity on the state law claims against it.  Accordingly, those claims are dismissed.  The Department does not argue that it is entitled to immunity on the disability discrimination claims, and the panel decision did not address the merits of those claims or whether the Court could permit discovery on those claims before deciding them on the merits.  Therefore, those claims are not dismissed.  Likewise, the §1983 claims against the "John and Jane Doe" Defendants are not dismissed at this time.

JUDGMENT ON THE PLEADINGS STANDARD

It is well established that a complaint must contain "sufficient allegations that, when taken as true, 'raise a right to relief above the speculative level.'"  *Snead*, 2024 WL 4132941, at *3 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  So, in evaluating a motion for judgment on the pleadings, the Court must "accept as true all material facts alleged in the non-moving party's pleading" and "view those facts in the light most favorable to the non-moving party."  *Id.* (quoting *Perez v.*

4

*Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014)). If there is a material fact dispute based on the pleadings, then the motion should be denied, but if the pleadings do not contain sufficient factual allegations to support a claim, then the claim should be dismissed. *Id.*

The Court understands that immunity defenses like qualified and sovereign immunity are "affirmative defenses from litigation itself" intended to "free officials from the concerns of litigation, including avoidance of disruptive discovery." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009)). In *Iqbal*, for example, the Supreme Court concluded that the plaintiff had not alleged facts "plausibly showing" that the United States Attorney General and FBI Director purposefully adopted a policy that subjected the plaintiff to harsh conditions of confinement because of a constitutionally protected characteristic; the complaint did not "show, or even intimate" that "the Nation's top law enforcement officers" purposely considered the plaintiff's race, religion, or national origin in adopting the challenged policy. *Iqbal*, 556 U.S. at 683. The Supreme Court noted that the plaintiff alleged "serious official misconduct" by lower-level defendants who were not before the Supreme Court, and the Supreme Court expressed "no opinion concerning the sufficiency" of the allegations against those defendants. *Id.* at 684.

FACTUAL ALLEGATIONS

Plaintiff alleges the following facts, which the Court must accept as true and view in the light most favorable to Plaintiff. Plaintiff's 74-year-old brother, Curtis Mincey, was incarcerated at Rutledge State Prison. Mincey was disabled because he suffered from schizophrenia and other mental illnesses. In early July 2021, another Rutledge inmate notified Plaintiff that he had not seen or heard from Mincey in more than three days. Plaintiff contacted a Rutledge corrections officer and stated that she believed Mincey's life was in danger, but the corrections officer did not do anything to check on Mincey's wellbeing or safety. The next day, Plaintiff contacted a counselor at the prison to express her concerns for Mincey's safety, but the counselor ignored Plaintiff's requests to check on Mincey's safety. Less than three weeks after Plaintiff contacted the corrections officer and counselor to inform them of her fear that Mincey's life was in danger, Mincey died. Mincey suffered blunt force trauma to his head, neck, torso, and extremities. His death was ruled a homicide caused by blunt force trauma to the head following a physical altercation with others. Although a deputy warden told Plaintiff that Jones would contact her to provide more information about Mincey's death, Jones refused to provide Plaintiff with any details about what happened to Mincey. The Georgia Bureau of Investigation completed a report on

Mincey's death, but Defendants have refused to provide the report to Plaintiff.

Plaintiff could not make specific factual allegations about what caused the head injury that led to Mincey's death because no one has told her what happened or who was involved. Plaintiff does allege, though, that unnamed officers used excessive force against her elderly brother by severely beating him even though there was no reason for them to any use force against him—or that the unnamed officers allowed other inmates to beat Mincey to death. Plaintiff further alleges that unnamed officers were present when Mincey was beaten and knew that Mincey was in danger but failed to take reasonable measures to prevent Mincey from being beaten to death. Plaintiff also asserts that unnamed officers knew Mincey had been subjected to excessive force, including trauma to his head, but refused to provide him with medical care. Plaintiff further asserts that Mincey was disabled due to his schizophrenia and other mental illnesses, that Mincey was suffering a mental health crisis, and that corrections officers responded to that mental health crisis by using pain techniques instead of providing him with appropriate care—thereby punishing him because of his disability.

## DISCUSSION

In their motion for judgment on the pleadings, the named Defendants contend that Plaintiff's remaining claims should be

7

dismissed because (1) Jones is entitled to qualified immunity on the § 1983 claim against him, (2) the Department and Jones are entitled to state law sovereign immunity on the state law claims against them, and (3) Plaintiff did not allege with specificity the circumstances of her brother's beating or disability discrimination. The Court addresses each argument in turn.

Regarding the individual capacity § 1983 claim and state law claims against Jones, the named Defendants are correct that Plaintiff did not make any specific factual allegations to suggest that Jones was personally involved in either the attack on Mincey, the response to the attack, or the alleged failure to provide medical care following the attack. Plaintiff also did not allege specific facts to show a causal connection between Jones's actions and the events giving rise to this action. She summarily alleges that Jones had a custom, policy, and practice of (1) failing to investigate and discipline officers who used excessive force against inmates, (2) condoning misconduct by officers, and (3) failing to provide adequate staffing to prevent violence to inmates. But Plaintiff did not allege any specific facts to support those claims. *Cf. Garner ex rel. R.C. v. Jamerson*, No. 23-10130, 2023 WL 4927250, at *3 (11th Cir. Aug. 2, 2023) (per curiam) (finding that the plaintiff alleged enough facts to overcome the supervisors' qualified immunity claim in a case where an inmate died because officers failed to follow required

8

protocols; the complaint alleged specific facts to show that the supervisors knew that officers routinely failed to follow the protocol and regularly falsified records about it). Accordingly, based on the present Complaint, Plaintiff did not adequately allege sufficient facts to show that Jones violated clearly established law, so Jones is entitled to qualified immunity on the § 1983 claim and official immunity on the state law claims. Those claims are dismissed.

As to the state law claims against the Department, the Department contends that it is entitled to sovereign immunity and that it has not waived sovereign immunity as to any of Plaintiff's state law claims. Plaintiff acknowledges that her claim for assault and battery based on any beating inflicted by officers is barred by sovereign immunity, so that claim is dismissed. She contends that her state law claim based on officers' failure to follow prison procedures for responding to an inmate with a serious medical need is not barred. But since Defendants have refused to provide Plaintiff with any information about how her brother died while in their custody, Plaintiff does not know precisely what happened—who beat Mincey, who witnessed the beating, who responded to the beating, what the responders did, or whether the responders could have saved Mincey if they followed procedures—and so she cannot allege with specificity that a Department employee failed to provide reasonable medical care or that the failure proximately

9

caused Mincey's death. Thus, based on the present Complaint, Plaintiff did not adequately allege sufficient facts to establish a waiver of sovereign immunity as to the state law claims against the Department, so those claims are dismissed.

The remaining claims against the Department are Plaintiff's disability discrimination claims under the Americans with Disabilities Act and the Rehabilitation Act. The Department did not assert an immunity defense to those claims. Rather, the Department contends that Plaintiff did not allege enough facts to show that Mincey was discriminated against due to a disability. As discussed above, Plaintiff alleges that Mincey was disabled due to his schizophrenia and other mental illnesses, that Mincey was suffering a mental health crisis, and that unnamed corrections officers responded to that mental health crisis by using pain techniques instead of providing him with appropriate care—thereby punishing him because of his disability. Defendants contend that these allegations are too conclusory, emphasizing that "Mincey was killed by unknown assailants under unknown circumstances." Defs.' Br. in Supp. of Mot. for J. on the Pleadings 9, ECF No. 3-1. The assailants and circumstances are "unknown" to Plaintiff because the Department has not provided her with that information, so she cannot allege precisely what happened or who was involved. The Department does not contend that it does not know at least some of the relevant circumstances, including which officers and

10

supervisors were on duty when Mincey was beaten and any facts documented in incident reports prepared by its employees and the GBI report that has not been provided to Plaintiff.

The Court previously deferred ruling on the merits of the disability discrimination claims pending limited discovery, but the Court now recognizes that it did not adequately explain that decision in its previous order.  The Court's rationale in deferring its ruling on the disability discrimination claims pending limited discovery was that although Plaintiff did not allege specific facts about what happened to Mincey, her allegations certainly raise a reasonable expectation that discovery will reveal evidence of (1) Mincey's disability-related mental health crisis, (2) which officers spoke with Plaintiff in early July 2021 and what actions they took based on Plaintiff's warnings about Mincey's safety, (3) which officers responded to Mincey's disability-related mental health crisis, (4) whether any officers beat Mincey because of his disability, and (5) the circumstances surrounding the beating, including which corrections officers responded to the scene, what they did, and whether their conduct was affected by Mincey's disability.  Absent some limited discovery, Plaintiff has no avenue to learn how her elderly, mentally ill brother was killed while in State custody.

The panel decision vacating the Court's order that deferred ruling on the immunity decisions did not address the disability

discrimination claims. Rather, the panel decision acknowledged that those claims remained in the case but addressed only whether the Court erred in permitting limited discovery before ruling on the immunity defenses as to the individual capacity § 1983 claim against Jones and the state law claims against the Department. The panel focused on the fact that the "thrust" of qualified and sovereign immunity defenses is to "free officials from the concerns of litigation," including discovery, on claims where they assert an immunity defense. *Snead*, 2024 WL 4132941, at *3 (quoting *Iqbal*, 556 U.S. at 685). The panel's holding remanded for the Court "to decide the defendants' immunity issues in the first instance." *Id.* at *3.

The Court recognizes that the panel noted that Rule 8's notice pleading standard does not unlock "the doors of discovery" for a plaintiff "armed with nothing more than conclusions." *Id.* (quoting *Iqbal*, 556 U.S. at 678-79). But the panel did not address whether limited discovery may be allowed where, as here, the Plaintiff is not simply armed with mere conclusions because her Complaint alleges sufficient facts to show that an elderly, disabled inmate was allowed to be beaten to death while in State custody. While Plaintiff cannot in good faith allege additional details because they have been withheld from her, Plaintiff's allegations plausibly suggest that discovery may reveal evidence that the incident occurred because the State officers who were involved

12

were indifferent to inmate safety or engaged in disability discrimination. *Cf. Iqbal*, 556 U.S. at 683-84 (recognizing that while the complaint did not contain factual allegations to suggest that the Nation's top law enforcement officials had the requisite state of mind to support claims against them, the complaint did allege "serious official misconduct" by other officials).

For these reasons, under the unique circumstances of this case, the Court concludes that it is inappropriate to dismiss the disability discrimination claims for failure to provide more specific factual allegations without providing Plaintiff an opportunity for limited discovery so Plaintiff can learn what happened to Mincey and who was involved in the events surrounding his death. The Court finds that the panel's decision, which required the Court to decide the immunity defenses before permitting any discovery on the claims to which an immunity defense was asserted, does not preclude the Court from permitting limited discovery on the claims for which no immunity defense was raised. The Court confirms its ruling that defers deciding the Department's motion for judgment on the pleadings as to the disability discrimination claims until limited discovery can be conducted.[3]

---

[3] The Court acknowledges the "Alice in Wonderland" nature of today's outcome. Plaintiff does not get to conduct limited discovery on her claim that Defendants violated her brother's rights under the United States Constitution by allowing him to be beaten to death while in State custody (per the appeals panel decision), but Plaintiff may conduct limited discovery to determine whether the deadly beating was the result of disability discrimination (per the undersigned's rationale expressed

13

In addition to her claims against the named Defendants, Plaintiff's Complaint reflects her intent to assert § 1983 claims against the prison officials who were personally involved in the events giving rise to this action. She asserted claims against John and Jane Doe Defendants: officers who knew about pre-attack threats to Mincey's safety, officers who were personally involved in the attack on Mincey, and/or officers who responded to the attack. She alleges that the unnamed John and Jane Doe officers knew about threats to Mincey's safety but failed to take any action to protect him, used excessive force against Mincey by severely beating him even though there was no reason for them to any use force against him, allowed other inmates to beat Mincey to death, and/or recognized that Mincey had serious injuries following the beating but failed to take action to get him treatment. Such conduct, if true, would violate clearly established law. The named Defendants did not seek dismissal of these claims.

The Court recognizes that fictitious party pleading is usually not allowed in federal court and that Plaintiff did not describe the John and Jane Doe defendants with enough specificity

---

in today's order). While the undersigned appreciates generally the distinction between immunity defenses and other defenses to liability, that distinction seems to lack a difference in the context of allowing limited discovery of materials in the sole control of a defendant which materials are necessary to fairly meet an immunity defense. By keeping the courthouse door slightly ajar for Plaintiff's disability discrimination claim, the undersigned hopes to avoid the harsh result of the appellate panel decision otherwise slamming the door shut on Plaintiffs' constitutional claims.

14

to enable service of process. But the Court also observes that Plaintiff cannot obtain the officers' identities without limited discovery from the Department. Ordinarily, "a plaintiff who knows the name of one defendant but not another is not without recourse. He can sue the party he knows, conduct discovery, and amend his pleadings or file a new case once he knows the name of other responsible parties." *Vielma v. Gruler*, 808 F. App'x 872, 881 (11th Cir. 2020) (per curiam). This, though, is not an ordinary case. The information Plaintiff seeks is not publicly available. Plaintiff's brother is dead and cannot tell her what happened. Plaintiff requested information from the Department so that she could identify who killed her brother and which officers were involved in the response to the beating, but the Department did not provide that information to Plaintiff. At this time, the Court declines to dismiss the John and Jane Doe Defendants, and the Court will permit limited discovery from the Department regarding their identities and the circumstances surrounding Mincey's death, after which Plaintiff may amend her Complaint to include the officers' names and specific factual allegations about their conduct.

CONCLUSION

When a person is entrusted to the custody of the State and that person is beaten to death while in State custody, such allegations plausibly suggest that discovery may reveal evidence to support a claim of deliberate indifference to inmate safety

against officers who were involved in the incident. And, when a complaint alleges that a disabled inmate suffering a mental health crisis was beaten to death instead of being provided with appropriate care, such allegations plausibly suggest that discovery may reveal evidence to support a claim of disability discrimination. To accomplish the objective of Federal Rule of Civil Procedure 1 and secure a "just" determination of an action, the Court finds that it must permit Plaintiff to learn how Curtis Mincey was allowed to be beaten to death while in State custody as it relates to the remaining claims that the panel of the Court of Appeals has not directed to be dismissed.

Within twenty-eight days of today's Order, the parties shall present the Court with a scheduling order that allows the limited discovery described above to be completed, with a deadline for Plaintiff to amend the Complaint. If either party contends that a protective order is necessary, the parties shall file a joint motion for a protective order and submit a proposed protective order to the Court within twenty-eight days of today's Order.

IT IS SO ORDERED, this 29th day of October, 2024.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA