IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| BENNIE MAE SNEAD, | * |
| Plaintiff, | * |
| vs. | * |
| | CASE NO. 4:23-CV-153 (CDL) |
| GEORGIA DEPARTMENT OF CORRECTIONS, *et al.*, | * |
| | * |
| Defendants. | |
| | * |

O R D E R

Plaintiff Bennie Mae's brother Curtis Mincey was beaten to death while he was incarcerated at Rutledge State Prison. Plaintiff claims that the Georgia Department of Corrections discriminated against Mincey because of a disability, in violation of § 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("§ 504"), and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq*. The parties completed discovery on these claims, and the Department now seeks summary judgment on them.[1] As explained below, the Court grants the summary judgment motion (ECF No. 38).

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the

---

[1] Based on the discovery completed to date, Plaintiff also seeks to amend her complaint to add claims against Defendants under 42 U.S.C. § 1983. The Court addressed the motion for leave to amend in a separate order.

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

## FACTUAL BACKGROUND

Rutledge State Prison is operated by the Georgia Department of Corrections ("GDC"). Mincey entered Rutledge in September 2020. The Rutledge classification committee listed Mincey's medical limitations as "hearing aid, MH3, hearing impaired, slow eating, bottom bunk, no strenuous activ."  Jones Dep. Ex. 8, Mincey Institutional File at GDC – 000054, ECF No. 52-5.[2]  On his intelligence profile, Mincey's supervision level was listed as "Medium/Mh III."  Jones Dep. Ex. 7, Mincey Intelligence Profile at GDC – 000191, ECF No. 52-4.  Mincey preferred to be housed without a cellmate, and officers "guess[ed]" it was because he could not

---

[2] Plaintiff also asserts that Mincey had "schizophrenia with religious delusions," but the evidence she cited on this point does not establish this assertion. Pl.'s Fact Statement ¶ 3, ECF No. 41-2.

2

hear. Bryant Dep. 59:17-60:22, ECF No. 44. One officer reported that she could not understand Mincey when he tried to request things from her; when that happened, she told her supervisor that Mincey wanted the supervisor to "go over" to speak with Mincey. Bryant Dep. 58:19-59:16, ECF No. 44.[3]

Mincey's prison medical record states that he received new hearing aids in February of 2021. Jones Dep. Ex. 60, Mincey Medical File at GDC-002383, ECF No. 52-26. In March 2021, a prison official noted that Mincey reported that he could not hear the call-out for meals and that he was not getting enough food as a result. *Id.* at GDC-002396. In April 2021, a prison official noted in Mincey's file, "Audiology written AGAIN for dysfunctioning [hearing aids] to be repaired/replaced." *Id.* at GDC-002394. In a progress record dated June 21, 2021, a prison official noted that Mincey "broke his hearing aids." *Id.* at GDC-002391. According to GDC, Mincey received a "hearing notification watch" in July 2021. Jones Dep. Ex. 18, Mem. re Offender Mincey's Watch (July 15, 2021), ECF No. 52-13. Plaintiff pointed to evidence that although one officer saw Mincey with the watch, that officer did not receive information about it or instructions to charge it.

---

[3] Plaintiff contends that "there was nothing done to determine what Mincey needed or was requesting," but she did not point to any evidence to support this contention. Pl.'s Resp. to Def.'s Fact Statement ¶ 5, ECF No. 41-1.

3

Bryant Dep. 155:8-23. Plaintiff pointed to evidence that another officer never saw the watch. West Dep. 177:17-178:10, ECF No. 47.

Mincey was moved to the prison's administrative segregation unit on June 23, 2021, where he was housed with inmate Joshua Starks. Jones Dep. 42:13-44:13, ECF No. 52. Mincey died in his cell on July 21, 2021. His death was ruled a homicide; Starks was charged with murder in connection with Mincey's death. One of the officers who packed Mincey's personal property following his death did not recall packing a watch. West Dep. 178:5-12.

## DISCUSSION

Title II of the ADA and § 504 of the Rehabilitation Act prohibit public entities from discriminating against qualified individuals with disabilities. Title II of the ADA states, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C.A. § 12132. "Section 504 is pretty much identical[.]" *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1133 (11th Cir. 2019). It provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

4

29 U.S.C. § 794(a).  "Given the textual similarities between the two statutes," the same standards govern Title II and § 504 cases. *Silberman*, 927 F.3d at 1133.

To prevail on a claim under either Title II or Section 504, a plaintiff must establish: "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability."  *Christmas v. Nabors*, 76 F.4th 1320, 1333 (11th Cir. 2023) (quoting *J.S., III ex rel. J.S. Jr. v. Houston Cnty. Bd. of Educ.*, 877 F.3d 979, 985 (11th Cir. 2017)).  And where, as here, a plaintiff seeks damages for alleged disability discrimination, the plaintiff "must clear an additional hurdle" and "prove that the entity that he has sued engaged in intentional discrimination, which requires a showing of deliberate indifference." *Id.* (quoting *Ingram v. Kubik*, 30 F.4th 1241, 1257 (11th Cir. 2022)). "'Deliberate indifference' . . . is an 'exacting standard.'" *Silberman*, 927 F.3d at 1134 (quoting *J.S*, 877 F.3d at 987).  "It requires proof that 'the defendant knew that harm to a federally protected right was substantially likely and . . . failed to act on that likelihood.'" *Id.* (quoting *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 344 (11th Cir. 2012)).  To hold a

government entity liable for deliberate indifference, a plaintiff must show that an official with authority "to address the alleged discrimination and to institute corrective measures" on behalf of the public entity had "*actual knowledge* of discrimination in the [entity's] programs" but failed "adequately to respond." *Ingram*, 30 F.4th at 1259.

Here, GDC does not dispute that Mincey was a qualified individual with a disability because of his hearing loss. Plaintiff's argument is not a model of clarity, but she appears to claim that Mincey was subjected to discrimination because of his hearing loss when his cellmate attacked and killed him. The record reflects that prison officials were aware of Mincey's hearing loss, but Plaintiff did not point to any evidence that a prison official had actual knowledge that Mincey was substantially likely to face discrimination because of his hearing loss.[4] Plaintiff also did not point to evidence that prison officials failed to act despite actual knowledge of risks due to Mincey's hearing loss. Rather, the record reflects that the prison's medical personnel provided Mincey with hearing aids and made multiple attempts to fix them when Mincey complained that they weren't working. Pointing to a July 15, 2021 memo issued by the prison's warden and deputy warden

---

[4] GDC's present summary judgment focuses on the narrow issue of disability discrimination and does not address the issue of whether prison officials were deliberately indifferent to a known risk of harm to Mincey from other inmates.

6

of security, Plaintiff argues that the prison warden—the highest ranking official within the prison—was aware of Mincey's need for accommodations for his hearing loss. Jones Dep. Ex. 18, Mem. re Offender Mincey's Watch (July 15, 2021), ECF No. 52-13; also docketed at 31-4. That same memo states that Mincey was issued a hearing notification watch. *Id.* Plaintiff contends that there is no evidence that prison officials issued the watch to Mincey, but the evidence she cited in support of that contention establishes that at least one officer saw Mincey with the watch. Bryant Dep. 155:12-23. For all these reasons, the Court finds that Plaintiff failed to present sufficient evidence to create genuine fact dispute that a prison official with authority to institute corrective measures knew that Mincey faced harm to a federally protected right due to his hearing loss or that the official did not act despite such knowledge.

Plaintiff also suggests that GDC was deliberately indifferent to Mincey's disabilities because officers, knowing that Mincey preferred a single person cell due to his hearing loss, nevertheless assigned Mincey to a cell with a cellmate. In support of this argument, Plaintiff cites GDC's standing operating procedures on reasonable accommodations for offenders with disabilities. The policy states that "[s]ingle occupancy cells will be made available for offenders with severe medical disabilities, serious mental illness and other special needs, when

7

necessary." Jones Dep. Ex. 17, GDOC Policy No. 103.63 § IV.C.1., ECF No. 52-12.

Plaintiff did not point to evidence that Mincey suffered a severe medical disability, serious mental illness, or other special needs within the meaning of the policy that made it necessary for him to be housed in a single occupancy cell. Even if Plaintiff had pointed to such evidence, failure to follow a prison policy "does not, by itself, rise to the level of deliberate indifference." *Taylor v. Adams*, 221 F.3d 1254, 1259 (11th Cir. 2000). Rather, there must be some evidence that prison officials had a subjective awareness of a risk of harm to Mincey due to his disability, yet failed to act. The absence of such evidence defeats Plaintiff's argument.

## CONCLUSION

For the reasons set forth above, the Court grants GDC's summary judgment motion on Plaintiff's disability discrimination claims (ECF No. 38).

IT IS SO ORDERED, this 29th day of January, 2026.

                                              S/Clay D. Land
                                              CLAY D. LAND
                                              U.S. DISTRICT COURT JUDGE
                                              MIDDLE DISTRICT OF GEORGIA